| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY<br>STATE OF COLORADO<br>1777 6th St.<br>Boulder, CO 80302 | DATE FILED: March 4, 2022 4:59 PM<br>FILING ID: 2A93E81F4ACBA<br>CASE NUMBER: 2022CV30142 |
| **MARTIN MOCTEZUMA**, an individual<br><br>        Plaintiff,<br><br>v.<br><br>**ROYAL CREST DAIRY, LLC**, a Colorado Limited Liability Corporation<br><br>         Defendant. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs:*<br><br>Benjamin DeGolia, # 55737<br>Iris Halpern, # 53112<br>Rathod \| Mohamedbhai LLC<br>2701 Lawrence Street, Suite 100<br>Denver, CO 80205<br>(303) 578-4400 (t) / (303) 578-4401 (f)<br>bd@rmlawyers.com<br>ih@rmlawyers.com | Case No:<br><br>Division:<br><br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Martín Moctezuma, by and through his attorneys Benjamin DeGolia and Iris Halpern, of Rathod \| Mohamedbhai LLC, alleges as follows:

## I.      INTRODUCTION

This case involves an employer's failure to uphold its essential workers' most basic rights during the greatest public health emergency in generations. On November 2, 2020, at the peak of Colorado's first major wave of COVID-19, Mr. Moctezuma informed his supervisor at Royal Crest Diary, Inc. that he was feeling ill with flu-like symptoms, and that he would not be able to

1

EXHIBIT A

come to work the following day. When his symptoms worsened three days later—he had a high fever and had lost his sense of smell—Mr. Moctezuma sought a medical diagnosis and received confirmation that he was COVID-19 positive. Mr. Moctezuma immediately informed his employer that he had tested positive, sent a copy of the testing report, and told his employer he was on mandatory quarantine. In response, Royal Crest Dairy terminated him. When confronted with the blatantly unethical and unlawful termination, Royal Crest Dairy tried to cover up its actions by asserting Mr. Moctezuma abandoned his job. Mr. Moctezuma files this lawsuit not only to seek justice in his own case, but also to encourage other low-wage, immigrant workers to fight for their right to be treated with dignity in the workplace.

## II.   PARTIES, JURISDICTION, AND VENUE

1. At all times relevant to the subject matter of this litigation, Mr. Moctezuma was a resident of and domiciled in the State of Colorado.

2. Defendant Royal Crest Dairy, Inc. is a corporation organized under the laws of the State of Colorado, with its principal place of business in Denver, Colorado.

3. Royal Crest Dairy, Inc. has more than 500 employees across the State of Colorado.

4. From September 4, 2018 to October 2020, Mr. Moctezuma worked in the processing department at Royal Crest Dairy.

5. Jurisdiction is conferred on this Court pursuant to Colo. Rev. Stat. § 13-1-124.

6. Venue is proper in this Court pursuant to Colo. R. Civ. P. 98(c), in that all the events and omissions alleged herein occurred within the County of Boulder.

## III.   ADMINISTRATIVE EXHAUSTION

7. Plaintiff Martín Moctezuma timely filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") against Defendant Royal Crest Dairy, Inc. alleging discrimination based on his disability as well as retaliation in violation of the Colorado Anti-Discrimination Act ("CADA").

8. On December 9, 2021, Plaintiff Martín Moctezuma received Notice of Right to Sue from the CCRD on his claims of discrimination and retaliation.

### IV.  FACTUAL ALLEGATIONS

**Mr. Moctezuma's Employment at Royal Crest Dairy and Contracting COVID-19**

9. Martín Moctezuma was hired by Royal Crest Dairy, Inc. ("Royal Crest Dairy") on September 14, 2018.

10. Royal Crest Dairy is a food processing, distribution, and delivery service based in Denver, Colorado.

11. From the date of his hire to his termination on November 23, 2020, Mr. Moctezuma worked on an assembly line in Royal Crest Dairy's processing department in Longmont.

12. On November 2, 2020, Mr. Moctezuma awoke with flu-like symptoms. Mr. Moctezuma was afraid to tell his employer he was sick, and hoped he just had a mild cold and that he would feel better the next day.

13. That morning, around 6:30 a.m. he sent a text message to his supervisor, Kevin Follet, asking for the day off for personal reasons.

14. Later that evening, Mr. Moctezuma's symptoms had not improved, so he sent another text message to Mr. Follet, informing him that he was "not feeling so well," that he

would need to take the next day off work, and that he thought it was "best if [he] do[esn't] go to work tomorrow and probably until Thursday."

15. Mr. Moctezuma's condition worsened over the next several days. By Thursday, November 5, Mr. Moctezuma had developed a fever and lost his sense of taste and smell, and he feared he had contracted COVID-19. Mr. Moctezuma called Mr. Follet to inform him he was concerned he had contracted COVID-19, and Mr. Follet instructed him to get a diagnostic test.

16. Around this time, in early November 2020, it had become exceedingly difficult to obtain an appointment for a COVID-19 diagnostic test. Indeed, according to a Denver Post article from November 2020, "COVID-19 testing sites in Denver [were] so swamped that public health officials [were] asking people who can safely delay getting tested to do so."

17. On Monday, November 9, Mr. Moctezuma was able to secure an appointment at a testing clinic for that Friday. He immediately informed Mr. Follet via text message, writing that he "went to different clinics and had to make an appointment," and that he had obtained an appointment to get tested, and that he was "still the same with COVID symptoms," and he "still [didn't] feel good."

18. Mr. Follet instructed Mr. Moctezuma to instead go to the walk-in COVID-19 testing site at the Longmont County Fairgrounds. Mr. Moctezuma went the following day.

19. Throughout this time, Mr. Moctezuma communicated with Mr. Follet, informing Mr. Follet that he was continuing to feel very ill, advising him about his difficulty getting an appointment for a diagnostic test, and even sending a video of himself sitting in his vehicle at the Longmont County Fairgrounds testing site on November 10. At the testing center, Mr. Moctezuma was instructed to quarantine until he received his test results.

20. On Thursday, November 12, at 9:04 a.m., Mr. Moctezuma sent a text message to Mr. Follet that he was "feeling better" but that he was still "waiting for the COVID test results."

21. By the following Monday, November 16, Mr. Moctezuma still had not received his test results. Mr. Moctezuma called the testing clinic and was told he would receive his results that day. As such, Mr. Moctezuma sent a text message to Mr. Follet, informing him that "today [he would be] getting the COVID test results," that he was "feel[ing] way better and hopefully tomorrow [he] can go back to work."

### Mr. Moctezuma Tests Positive for COVID-19 and Royal Crest Fires Him

22. On Wednesday, November 18, 2020, Mr. Moctezuma finally received an email with his COVID-19 test report, indicating that he had tested positive for COVID-19.

23. Mr. Moctezuma immediately texted Mr. Follet, at 7:27 p.m. on November 18, attaching a copy of the testing report and explaining the quarantine timeline and retesting process explained to him by the testing center. Specifically, Mr. Moctezuma wrote to Mr. Follet that he was required "to quarantine 14 days after the day [he] got tested, [so] the last day [of his quarantine] would be on Tuesday [November] 24." Mr. Moctezuma also informed Mr. Follet that he was further required to return to the testing center at the end of his quarantine period, on November 23, 2020, to be retested for confirmation he was no longer infectious with COVID-19 before he returned to work.

24. Mr. Follet did not respond to Mr. Moctezuma's text message.

25. Mr. Moctezuma received a copy of his test report later that evening, which he immediately forwarded to Mr. Follet via text message.

26. Again, Mr. Follet did not respond to Mr. Moctezuma's text message.

27.After receiving no response from Mr. Follet, Mr. Moctezuma continued with his mandatory quarantine. The following day, however, he received a strange autogenerated email indicating his information had been deleted from Royal Crest's direct deposit system.

28.On Tuesday, November 23, 2020, Mr. Moctezuma went for his follow-up COVID-19 test as he had been instructed by the testing center. Mr. Moctezuma reached out to Mr. Follet after leaving the testing center, notifying him that he had been informed the results should be ready within two to three days.

29.Mr. Follet responded to Mr. Moctezuma's text message by simply stating: "Ok come and get your last check and drop off your uniforms."

30.Mr. Moctezuma was shocked. He had been given no prior indication that he had been terminated, nor did he have any reason to believe he would be terminated.

31.In the weeks that followed, Mr. Moctezuma repeatedly attempted to contact Royal Crest's Human Resources department to resolve deficient pay in his final paycheck and to understand why he had been abruptly terminated. This included multiple voicemails left for Royal Crest's Human Resources Director, Cyndee Cook, on Mr. Moctezuma's behalf by Rosy Quiroz, intake coordinator at El Comité, a Longmont community advocacy organization.

32.Royal Crest never responded to Ms. Quiroz's voicemails or Mr. Moctezuma's own repeated attempts to contact them.

33.In January 2021, Mr. Moctezuma sent an email to Royal Crest's Human Resources Department, requesting that he be paid for outstanding vacation and sick leave. In response, Ms. Cook asserted that:

    a.Mr. Moctezuma never tried to contact her;

    b.He was not in fact terminated;

  c. In fact, he had resigned his job on November 18, 2020—the very same day he informed Mr. Follet he had tested positive with COVID-19 and would likely miss at least an additional week of work due to the quarantine and retesting protocols.

34. Prior to his termination, Mr. Moctezuma was never warned, reprimanded, or disciplined for any reason. Indeed, Mr. Moctezuma had been promoted for his high-quality work on at least one occasion since he began working at Royal Crest.

<b>The COVID-19 Pandemic: State and Federal Government Responses</b>

35. On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.

36. To halt the spread of COVID-19 and to protect workers, in March 2020 Congress passed the Emergency Paid Sick Leave Act ("EPSLA") and the Families First Coronavirus Response Act ("FFCRA"), amending the Family and Medical Leave Act (FMLA) to allow for emergency paid or unpaid sick leave depending on the size of the employer.

37. The following month, Governor Polis issued his Safer at Home Executive Order (Executive Order 2020 044), mandating that "all individuals who are sick or who test positive for COVID-19 to Stay at Home."

38. Governor Polis's order further directed the CCRD to promulgate guidance to "prevent discrimination in the workplace related to COVID-19," and specifically ordered that employers must "provide reasonable accommodation" and were "prohibited from discriminating against employees who are showing symptoms of COVID-19."

39. In Executive Order 2020 044, Governor Polis further directed the Colorado Department of Public Health and Environment ("CDPHE") to issue public health orders limiting the spread of COVID-19 in the workplace and tasked the Colorado Department of Labor and

7

Employment ("CDLE") with promulgating temporary emergency sick leave rules at the state level.

40.     On June 1, 2020, Governor Polis issued Executive Order D 2020 091, again directing, inter alia, the CCRD to provide continued guidance to prevent discrimination in the workplace related to COVID-19, including mandating the provision of accommodations.

41.     In Order D 2020 091, Governor Polis further directed the CDPHE to advise Coloradoans to get tested for COVID-19 if they were experiencing flu-like symptoms or if they were sick, and to stay at home until at least three days after any fever and other symptoms subsided.

42.     On October 6, 2020, Governor Polis issued Executive Order D 2020 213, which extended the directives issued in the previous Executive Order D 2020 091.

43.     On November 28, 2020, Executive Order D 2020 265 extended the directives issued in Executive Order D 2020 235. Executive Order 2020 265 was in place throughout December 2020 and did not expire until December 28, 2020.

44.     On July 14, 2020, the Healthy Families and Workplaces Act ("HFWA") mandated that all employers in the State of Colorado, regardless of size, provide paid leave to their employees for sickness related to COVID-19, even if the employee would not be entitled to paid leave under federal legislation.

45.     Despite federal and state legislation requiring paid sick leave, Royal Crest Dairy did not inform its employees of their entitlement to paid sick leave in the event of exposure or to the contracting of COVID-19.

46.     By November 2020, when Mr. Moctezuma contracted COVID-19, the pandemic was in full swing in Colorado. Indeed, November represented the peak of Colorado's first major

wave of COVID-19. At the end of 2020, COVID-19 had become one of the leading causes of death in Colorado, taking the lives of over 5,300 Coloradoans in that first year of the pandemic.

47. Unfortunately, working class—and especially Hispanic—communities suffered the brunt of the first wave of the pandemic in Colorado. According to research by the Centers for Disease Control, Hispanic communities made up over half the COVID-19 hospitalizations and deaths during the first wave of the pandemic in Colorado, despite only comprising approximately one-quarter of the total population.

## V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Emergency Paid Sick Leave/Family First Coronavirus Response Act/Family and Medical Leave Act**
**29 U.S.C. § 2601 *et seq.*, as amended by Pub. L. No. 116-127**
**Interference/Denial of Entitlement**

48. Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

49. In 2020, Congress enacted the FFCRA, including Emergency Paid Sick Leave Act and Emergency Family and Medical Leave Expansion Act, which entitled employees who were unable to work because of COVID-19 to paid leave for companies with fewer than 500 employees and unpaid leave pursuant to the Family and Medical Leave Act ("FMLA") for companies with more than 500 employees.

50. The FFCRA was in effect during all times relevant to Mr. Moctezuma's claims.

51. The FFCRA provided that an employer shall provide to each employee employed by the employer paid sick time to the extent that the employee was unable to work due to a need for leave because the employee had been advised by a health care provider to quarantine due to concerns related to COVID-19 or the employee was experiencing symptoms.

52. Both the FFCRA and FMLA prohibit interference. To establish interference an employee must show that: (1) the employee was entitled to sick leave; (2) an adverse action by the employer interfered with the employee's right to take sick leave; and (3) the employer's action was related to the exercise or attempted exercise of the employee's statutory rights.

53. On November 2, 2020, Mr. Moctezuma informed Mr. Follet that he was experiencing flu-like symptoms, and on November 5, 2020, Mr. Moctezuma informed him he had lost his sense of taste and smell. Mr. Follet instructed Mr. Moctezuma to get a diagnostic test for COVID-19.

54. On November 10, 2020, Mr. Moctezuma was able to obtain an appointment and got tested for COVID-19. Mr. Moctezuma was instructed to quarantine until he obtained his testing results.

55. Mr. Moctezuma finally obtained his test results on November 18, 2020, indicating he was positive for COVID-19. Mr. Moctezuma immediately informed Mr. Follet that he was instructed to re-test and quarantine until he obtained a negative test.

56. Royal Crest Dairy terminated Mr. Moctezuma the same day, November 18, 2020 because he could not work due to the required quarantine.

57. Mr. Moctezuma was not paid for and did not receive the paid leave to which he was entitled.

58. Royal Crest Dairy violated both the FFCRA and FMLA when it interfered with Mr. Moctezuma's right to emergency paid sick leave.

59. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

60. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Mr. Moctezuma's protected rights.

61. Royal Crest Dairy did not act in good faith when it terminated Mr. Moctezuma and Royal Crest Dairy did not reasonably believe they were following the law.

**SECOND CLAIM FOR RELIEF**
**Emergency Paid Sick Leave/Families First Coronavirus Response Act/Family and Medical Leave Act**
**29 U.S.C. § 2901 *et seq.*, as amended by Pub. L. No. 116-127**
**Retaliation**

62. Plaintiff hereby incorporates all other paragraphs of this Complaint as if set forth herein.

63. The FFCRA was in effect during all times relevant to Mr. Moctezuma's claims.

64. Both the FFCRA and FMLA prohibit retaliation.

65. To establish a retaliation claim under the FMLA and the FFCRA, an employee must show that: (1) they engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) there is a causal connection between the protected activity and the adverse action.

66. Mr. Moctezuma was not compensated during his mandatory quarantine.

67. On November 12, 2020, Mr. Moctezuma informed Mr. Follet that he still had not received his COVID-19 test results, and that he was on mandatory quarantine until he received his test results.

68. On November 18, 2020, Mr. Moctezuma informed Mr. Follet that he had tested positive for COVID-19. At that time, Mr. Moctezuma sent Mr. Follet notice that he was under mandatory quarantine until he received a negative COVID-19 test.

69. On November 23, 2020, Mr. Moctezuma learned he had been terminated from Royal Crest Dairy. Royal Crest Dairy's Human Resources manager later informed Mr. Moctezuma that he had been separated from the company on November 18, 2020.

70. The reason for Mr. Moctezuma's termination was his vindication of his right to sick leave under the FFCRA/FMLA.

71. Defendant Royal Crest Dairy violated the FFCRA and FMLA when it retaliated against Plaintiff by terminating him while on COVID-19 medical leave.

72. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

73. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Mr. Moctezuma's protected rights.

74. Defendant Royal Crest Dairy did not act in good faith when it terminated Mr. Moctezuma and Royal Crest did not reasonably believe they were following the law.

### THIRD CLAIM FOR RELIEF
### Colorado Anti-Discrimination Act
### C.R.S. § 24-34-301 *et seq.*
### Discrimination on the Basis of Disability Including Failure to Accommodate

75. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

76. Plaintiff has exhausted remedies by filing charges of discrimination with the CCRD against Defendant Royal Crest Dairy.

77. The CCRD and EEOC confirmed that COVID-19 may be considered a disability for the purposes of antidiscrimination laws.

78. CADA prohibits employers from discriminatory or unfair employment practices against employees who are showing symptoms of COVID-19 or who have been in contact with a known positive case of COVID-19.

79. Discriminatory or unfair employment practices include a failure to hire, discharge, promote or remote, harass or decisions related to compensation, terms, conditions, or privileges of employment.

80. Mr. Moctezuma tested positive for COVID-19 on November 18, 2020, and he was under mandatory quarantine as a result of his positive COVID-19 diagnosis when he was terminated on November 18, 2020.

81. Defendant Royal Crest Dairy terminated Mr. Moctezuma because of COVID-19 related illness.

82. Royal Crest Dairy did not provide reasonable accommodations to Mr. Moctezuma as required by law.

83. Royal Crest Dairy discriminated against Mr. Moctezuma based on his disability or because Royal Crest Dairy regarded Mr. Moctezuma as disabled.

84. The effect of the complained-of practices in the foregoing paragraphs has been to deprive Mr. Moctezuma of equal employment opportunities because of disabilities and/or because of the need to provide reasonable accommodations for his disabilities.

85. The effects of the practices described in the paragraphs above have been to inflict emotional pain, suffering, and inconvenience upon Mr. Moctezuma and to deprive him of the financial and other benefits of working at Royal Crest Dairy.

86. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

14

87. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Mr. Moctezuma's protected rights.

## FOURTH CLAIM FOR RELIEF
### Colorado Anti-Discrimination Act
### C.R.S. § 24-34-301 *et seq.*
### Retaliation

88. Plaintiff incorporates by reference all previous paragraphs of the Complaint as if fully set forth herein.

89. Royal Crest Dairy retaliated against Plaintiff Martín Moctezuma in violation of CADA.

90. The CADA states "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." C.R.S. § 24-34-402(IV).

91. The Tenth Circuit and others have all "recognized that a request for accommodation can constitute protected activity supporting a retaliation claim." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016).

92. Mr. Moctezuma developed flu-like symptoms on November 2, 2020, and tested positive for COVID-19 on November 18, 2020.

93. The very same day Mr. Moctezuma informed Mr. Follet he had tested positive for COVID-19, Royal Crest Dairy terminated him.

94. Mr. Moctezuma was legally entitled to time off as an accommodation for his COVID-19 disability.

95. Royal Crest Dairy terminated Mr. Moctezuma in retaliation for his exercise of his right to a reasonable accommodation in the form of time off from work.

96. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

97. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Mr. Moctezuma's protected rights.

### FIFTH CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy

98. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

99. Royal Crest Dairy terminated Mr. Moctezuma in violation of public policy as set forth in numerous statutes, guidelines, regulations, and executive orders about or relating to COVID-19, including but not limited to Executive Order D 2020 044, Executive Order D 2020 265, and other applicable statutes, codes, orders, regulations, guidance, and other sources of public policy. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 104 (Colo. 1992); *Kearl v. Portage Envtl., Inc.*, 205 P.3d 496, 499 (Colo. App. 2008); *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 524–25 (Colo. 1996).

100. The CCRD has also specified that "[e]mployers are prohibited from discriminatory or unfair employment practices against employees who are showing symptoms of COVID-19 or who have been in contact with a known positive case of COVID-19. Discriminatory or unfair employment practices include a failure to hire, discharge, promote or remote, harass or decisions related to compensation, terms, conditions or privileges of employment."

101. Defendant's conduct described herein was attended by circumstances of fraud, malice, or willful and wanton conduct within the meaning of C.R.S. § 13-21-102.

102. As a direct result of Defendant's actions, Mr. Moctezuma has suffered injuries, damages, and losses in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### Healthy Families and Workplaces Act
### C.R.S. § 8-13.3-401 et seq.
### Denial of Entitlement

103. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

104. The Colorado legislature enacted the Healthy Families and Workplaces Act ("HFWA") in July 2020.

105. The HFWA specifies that all employers in the state of Colorado shall comply with the federal Emergency Paid Sick Leave Act and Families First Coronavirus Response Act, Pub. L. 116-127.

106. The HFWA further specifies that "on or after July 15, 2020, through December 31, 2020, each employer in the state, regardless of size, shall provide paid sick leave in the amount and for the purposes provided in the federal Emergency Paid Sick Leave Act in the Families First Coronavirus Response Act, Pub. L. 116-127, to each employee who is not covered under the Emergency Paid Sick Leave Act."

107. Royal Crest Dairy violated the HFWA when it interfered with Mr. Moctezuma's right to emergency paid sick leave.

108. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

109. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Mr. Moctezuma's protected rights.

### SEVENTH CLAIM FOR RELIEF
### Healthy Families and Workplaces Act
### C.R.S. § 8-13.3-401 et seq.
### Retaliation

110. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

111. The HFWA in section 8-13.3-407(2)(a) states, "An employer shall not take retaliatory personnel action or discriminate against an employee or former employee because the person has exercised, attempted to exercise, or supported the exercise of rights protected under this part 4, including the right to request or use paid sick leave pursuant to this part 4."

112. Royal Crest Dairy violated the HFWA when it retaliated against Mr. Moctezuma by terminating him while on COVID-19 medical leave.

113. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

114. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Mr. Moctezuma's protected rights.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests this Court enter judgment for the following relief:

1. Actual economic damages as established at trial;

2. Compensatory damages, including but limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

3. Liquidated damages as allowed by law for all such claims where available;

4. Punitive damages as allowed by law for all such claims where available.

5. Pre-judgment and post-judgment interest at the highest lawful rate;

6. Appropriate tax-offset;

7. Attorneys' fees and costs; and

8. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 4th day of March 2022.

RATHOD | MOHAMEDBHAI LLC

*s/ Benjamin DeGolia*
Benjamin DeGolia, # 55737
Iris Halpern, # 53112
2701 Lawrence St., Suite 100
Denver, CO 80205
(303) 578-4400
bd@rmlawyers.com
ih@rmlawyers.com

19